IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY CIOCCA | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-5222 |
| HEIDRICK & STRUGGLES, INC. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                 **MAY 21, 2018**

Presently before the Court are Defendant's Motion to Clarify and Confirm Claims Alleged in Complaint (ECF No. 17), Plaintiff's Response in Opposition (ECF No. 18), Defendant's Reply to the Response (ECF No. 20), and Plaintiff's Sur-Reply (ECF No. 21). For the following reasons, Defendant's Motion will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

This employment discrimination case arises from Plaintiff Mary Ciocca's allegations that her employer, Defendant Heidrick & Struggles, Inc. ("H&S"), subjected her to discrimination and a hostile work environment based on her pregnancy and gender. Plaintiff was employed as an Office Manager by H&S's predecessor company, Design Strategies International ("DSI") from approximately June 2011 until early March 2016, when DSI merged with H&S. (Compl. ¶¶ 18, 20-21, ECF No. 1.) Immediately after the DSI/H&S merger, Plaintiff's job title was changed to Project Development Coordinator, and she began reporting to H&S Principal, Amy

---

[1] As noted below, we treat this Motion as one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Accordingly, the factual allegations in the Complaint are accepted as true and construed in the light most favorable to Plaintiff as the non-moving party. *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008).

Miller ("Miller"), and H&S Partners, Sarah Schwab ("Schwab") and Steve Krupp ("Krupp"). (*Id.* ¶ 21.)

In December 2015, Plaintiff began fertility treatment, which initially involved hormone therapy. (*Id.* ¶ 19.) Throughout March of 2016, Plaintiff continued her fertility treatment and regularly advised Miller of her treatment plan and appointments. (*Id.* ¶¶ 22-23.) On or about March 25, 2016, Plaintiff informed Miller that her treatments had failed and that she planned to pursue in vitro fertilization ("IFV"). (*Id.* ¶ 26.) Shortly thereafter, Plaintiff informed Miller of her IVF treatment plan and provided the dates of her scheduled appointments to Miller and her other supervisors. (*Id.* ¶ 27.) Between April and June 2016, Plaintiff attended numerous IVF treatment appointments before her work day began. (*Id.* ¶ 29.)

After Plaintiff informed Miller of her IVF schedule, "Miller's demeanor negatively changed towards Plaintiff in the workplace, and Plaintiff began being unreasonably micromanaged and subjected to greater scrutiny." (*Id.* ¶ 28.) On June 2, 2016, Plaintiff was summoned to a meeting with Miller and Schwab, at which she was placed on a 45-day performance improvement plan ("PIP") and required to have follow-up meetings with Miller on a weekly basis. (*Id.* ¶¶ 30, 32.) At the June 2 meeting, Plaintiff unsuccessfully objected to, and requested an explanation of the reasons for, her placement on the PIP. (*Id.* ¶ 31.) Plaintiff's IVF treatment was successful, and on July 12, 2016, Plaintiff informed Miller and Krupp that she was pregnant. (*Id.* ¶ 33.) On July 18, 2016, even though Plaintiff had met or exceeded the requirements of the initial PIP, she was placed on an amended PIP for thirty additional days. (*Id.* ¶¶ 34-36.) On August 18, 2016, H&S terminated Plaintiff's employment for purportedly failing to improve on her performance deficiencies. (*Id.* ¶ 37.) According to Plaintiff, her "sex and pregnancy were motivating and/or determinative factors in Defendant's discriminatory treatment

of Plaintiff, including but not limited to, the hostile work environment to which she was subjected and her termination." (*Id.* ¶ 42.) Plaintiff also alleges that Defendant's discriminatory conduct "was severe and/or pervasive enough" to cause a reasonable person and Plaintiff to believe "that the conditions of employment had been altered and that a hostile work environment existed." (*Id.* ¶ 48.)

On or about September 15, 2016, Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC"). (*Id.* ¶ 15, Ex. 1.) The EEOC issued Plaintiff a right-to-sue letter on August 23, 2017. (*Id.* ¶ 16, Ex. 2.) On November 20, 2017, Plaintiff filed a Complaint, which contained three counts. The counts alleged violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§2000e-2000e-17 (Count I); violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (Count II); and violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. and Cons. Stat. Ann. §§ 951-963 (Count III). On January 25, 2018, the FMLA count was dismissed without prejudice by Stipulation and Order (ECF No. 9), thus limiting the claims at issue to those alleged in Counts I and III. On January 30, 2018, Defendant filed its Answer and Affirmative Defenses.[2] (ECF No. 11.)

On March 23, 2018, we held an Initial Pretrial Conference, at which counsel discussed the parties' dispute regarding the nature of the claims alleged in Counts I and III of the Complaint. Plaintiff asserts that the Title VII and PHRA counts each encompass claims for pregnancy discrimination, sex discrimination, and hostile work environment. Defendant contends that those counts allege only pregnancy discrimination. At the conference, we directed

---

[2] Prior to filing its Answer, Defendant did not file a motion challenging the sufficiency or clarity of the Complaint. *See* Fed. R. Civ. P. 12(b), (e).

3

Defendant to file a motion regarding this dispute within twenty days of the conference. On April 11, 2018, Defendant filed the instant Motion requesting an order "confirming that Plaintiff may pursue only pregnancy discrimination claims under Title VII and the PHRA." (Def.'s Mot. Conclusion.) Plaintiff opposes the Motion. (ECF Nos. 18, 21.)

## II. LEGAL STANDARD

Defendant has not identified a procedural rule authorizing the relief sought in the Motion to Clarify and Confirm Claims Alleged in Complaint, nor has Defendant suggested what legal standard should be applied to the Motion. Regardless of the Motion's title, it is effectively a motion to dismiss Plaintiff's sex discrimination and hostile work environment claims. However, by filing an Answer, Defendant relinquished the ability to challenge the sufficiency of the Complaint via Federal Rule of Civil Procedure 12(b)(6) or 12(e). *See* Fed. R. Civ. P. 12(b) ("A [12(b)(6)] motion must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(e) ("[A] motion [for a more definite statement] must be made before filing a responsive pleading.").

At this stage of the case, Defendant's Motion is cognizable only if we construe it as one for judgment on the pleadings under Rule 12(c).[3] *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)."). The Motion does not refer to Rule 12(c). Nevertheless, we will analyze the sufficiency of the disputed claims under Rule 12(c). *See Tri-Arc Fin. Servs. v. Evanston Ins. Co.*, No. 16-2681, 2016 WL 7178419, at *2 (E.D. Pa. Dec. 8, 2016) ("If a defendant files a motion to dismiss after it has already filed an answer, . . . '"the motion must be considered a Rule 12(c) motion."'" (quoting *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991))); *Piester v. Hickey*,

---

[3] Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed — but early enough not to delay trial." Fed. R. Civ. P. 12(c).

No. 11-4720, 2012 WL 935789, at *2 (E.D. Pa. Mar. 20, 2012) (collecting cases applying Rule 12(c) to post-answer motions to dismiss).

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where the sufficiency of a complaint is challenged under Rule 12(c), courts evaluate the motion under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Turbe*, 938 F.2d at 428. A motion for judgment on the pleadings will be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law." *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)); *see also Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) ("[A Rule 12(c) motion] only has utility when all the material allegations of fact are admitted in the pleadings and only questions of law remain." (citations and internal quotation marks omitted)).

In evaluating a Rule 12(c) motion, the Court must "accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements." *DiCarlo*, 530 F.3d at 262-63. The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. *See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Finally, a plaintiff is not required to establish the elements of a prima facie claim in order to survive a Rule 12(b)(6) or Rule 12(c) motion. *Fowler*

5

*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). "A prima facie case is 'an evidentiary standard, not a pleading requirement.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788-89 (3d Cir. 2016) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002)).

## III. DISCUSSION[4]

Defendant contends that on its face, the Complaint alleges only two claims — one for pregnancy discrimination under Title VII and a corresponding pregnancy discrimination claim under the PHRA. (Def.'s Mot. ¶¶ 1-7.) Defendant argues that Plaintiff should be precluded from pursuing sex discrimination and hostile work environment claims because: (1) the Complaint fails to sufficiently allege, explicitly or implicitly, any violations of Title VII or the PHRA, other than pregnancy discrimination, (*Id.* ¶¶ 1-7, 11); and (2) Plaintiff failed to exhaust her administrative remedies as to the sex discrimination and hostile work environment claims. (*Id.* ¶ 12.) We disagree.

### A. Plaintiff's Pleading Is Sufficient

Defendant argues that the Complaint's allegations provide no basis to reasonably believe that Plaintiff's Title VII and PHRA claims assert anything other than pregnancy discrimination. According to Defendant's interpretation of the Complaint, its claims of sex discrimination or hostile work environment are deficient because the Complaint's Introduction does not specify the forms of discrimination at issue, the subsequent factual allegations do not use the precise terms "sex discrimination" or "sexual harassment," and each theory under Title VII and the PHRA is not alleged in a separate count. The pleading standard Defendant would have us impose exceeds

---

[4] The analysis of Plaintiff's claims under Title VII and the PHRA "is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n. 2 (3d Cir.2009) (internal quotation and citation omitted).

what is required by either Rule 8(a) or Rule 10(b). *See, e.g.*, *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (explaining the pleadings standards of Rules 8(a)(2) and 12(b)(6)); *Borrell v. Weinstein Supply Corp.*, No. 94-2857, 1994 WL 530102, at *2 (E.D. Pa. Sept. 27, 1994) ("Under Rule 10(b), separation of claims into separate counts is required only when such separation facilitates the clear presentation of the matters set forth."); *LeGare v. Univ. of Pa. Med. Sch.*, 488 F. Supp. 1250, 1256 (E.D. Pa. 1980) ("Rule 10(b) is addressed to separate factual claims rather than to separate legal grounds for relief.").

The Complaint's allegations are sufficient to inform Defendant of Plaintiff's claims for sex and pregnancy discrimination and hostile work environment. The Complaint expressly alleges that Plantiff's "sex and pregnancy" were the "motivating and/or determinative factors" in Defendant's discriminatory conduct, and that Defendant "did not target or treat in the same way similarly-situated male or non-pregnant female employees." (Compl. ¶¶ 40, 42; *see also id.* ¶ 41 (alleging that Plaintiff was replaced by a "male or non-pregnant female")). Considering all of the Complaint's allegations, including those noted above, Plaintiff's assertion of claims for both gender and pregnancy discrimination is discernable, if not evident.

We similarly find that Plaintiff's hostile work environment allegations are clear. The Complaint alleges that once Miller learned of Plaintiff's planned IVF treatment, "her demeanor negatively changed towards Plaintiff in the workplace, and Plaintiff began being unreasonably micromanaged and subjected to greater scrutiny." (*Id.* ¶ 28.) The Complaint then expressly alleges that she was subjected to a "hostile work environment" and that Defendant's discriminatory conduct was "severe and/or pervasive" enough to cause a reasonable person and Plaintiff to believe that such an environment existed. (*Id.* ¶¶ 42, 43, 48.)

Finally, Counts I and III are not deficient because they encompass multiple Title VII and the PHRA theories of recovery, all of which arise from the same factual allegations. While alleging each theory in a separate count might have added a measure of clarity to the Complaint — and avoided excess motion practice — it is not required by Rule 10(b) under the circumstances of this case. *See Borrell*, 1994 WL 530102, at *2 (finding that Rule 10(b) did not require separate counts for two theories of recovery under the same statute); *LeGare*, 488 F. Supp. at 1256 (declining to require separation of employment discrimination claims).[5]

### B. Plaintiff Exhausted Her Administrative Remedies

As a precondition to bringing suit under Title VII and the PHRA, a plaintiff must exhaust administrative remedies by filing a charge with the EEOC and the PHRC.[6] "The ensuing suit is

---

[5] *See also Nzabandora v. Univ. of Va.*, No. 17-00003, 2017 WL 4798920, at *1 (W.D. Va. Oct. 24, 2017) (denying Rule 12(c) motion to dismiss hostile work environment claim that was not pled as a separate count); *Moss v. Pasquotank Cty.*, No. 10-56, 2012 WL 2325846, at *5 (E.D.N.C. June 19, 2012) (ruling that claims under Title VII and 42 U.S.C. § 1981 could be alleged in the same count where they were based on the same transactions and occurrences and had the same prima facie elements); *Green v. Scurto Cement Constr., Ltd.*, 820 F. Supp. 2d 854, 857 (N.D. Ill. 2011) (explaining the term "claim" as used in federal practice and noting that Rule 10(b) "does not obligate [plaintiffs] to split their discrimination and retaliation contentions into different counts" (citing *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992))); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 468 (S.D.N.Y. 2005) (denying in part motion to dismiss and noting: "The fact that Plaintiff collects multiple [employment discrimination] claims under certain counts merely reflects that those claims are based on the same factual allegations."); *Haghkerdar v. Husson Coll.*, 226 F.R.D. 12, 14 (D. Me. 2005) (denying motion for a more definite statement where employment discrimination plaintiff did not plead claims in separate counts).

[6] Contrary to Defendant's suggestion, the exhaustion issue does not implicate our subject matter jurisdiction. "[Q]uestions of whether a plaintiff has timely exhausted the administrative remedies in Title VII actions are in the nature of statutes of limitation. They do not affect the district court's subject matter jurisdiction." *Francis v. Mineta*, 505 F.3d 266, 268 (3d Cir. 2007) (internal quotations omitted) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997); *see also Wilson v. MVM, Inc.*, 475 F.3d 166, 174 (3d Cir. 2007) (discussing the distinction between prudential and jurisdictional exhaustion) (citing *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 87 (3d Cir. 2000) (holding that exhaustion of Title VII claims should be analyzed under Rule 12(b)(6), not Rule 12(b)(1)).

limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 30–31 (3d Cir. 2014). "[O]nly those acts alleged that are 'fairly within the scope of the prior [administrative] complaint, or the investigation arising therefrom' are considered to have been exhausted." *Spindler v. SEPTA*, 47 F. App'x 92, 94 (3d Cir. 2002) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Fleming v. Kramont Emp'r Royce Realty, Inc.*, 2002 WL 1964257, at *2 (E.D. Pa. Aug. 16, 2002) ("The appropriate test for whether a plaintiff has failed to exhaust her administrative remedies is not whether the judicial complaint mirrors the plaintiff's earlier administrative complaint, but rather 'whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the EEOC investigation arising therefrom.'") (quoting *Antol*, 82 F.3d at 1295).

Applying this standard, Plaintiff satisfied the exhaustion requirement as to her sex and pregnancy discrimination and hostile work environment claims. In her EEOC/PHRC Charge of Discrimination, Plaintiff checked the boxes identifying the causes of her discrimination as "Sex" and "Other [ ] Pregnancy."[7] (Charge of Discrimination, Compl. Ex. A.) The accompanying Harm Summary recounts essentially the same pre- and post-pregnancy factual background as alleged in the Complaint and expressly states: "I have been discriminated against because of my

---

[7] In the context of this Motion, we may consider Plaintiff's administrative charge, which was also attached as an exhibit to the Complaint. *See, e.g., Ruddy v. U.S. Postal Serv.*, 455 F. App'x. 279, 283 (3d Cir. 2011) (holding that the district court "properly relied on [the plaintiff's] EEOC file . . . which is integral to his claim" when deciding the defendant's motion to dismiss); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (considering the plaintiff's formal EEOC charge in determining whether the plaintiff satisfied Title VII's statutory exhaustion requirement); *Twillie v. Erie Sch. Dist.*, No. 11-165, 2013 WL 4666072, at *5 n.3 (W.D. Pa. Aug. 30, 2013), *aff'd*, 575 F. App'x. 28 (3d Cir. 2014) ("The Court may properly consider documents from administrative proceedings before the EEOC in considering a motion to dismiss federal claims of employment discrimination.").

sex (female) and my pregnancy." (*Id.*) It further states that "[Defendant] did not target or treat in the same way similarly-situated male or non-pregnant females." (*Id.*)

With respect to hostile work environment, Plaintiff did not expressly use that phrase in her administrative Charge of Discrimination (and we note that the form does not contain a box to identify "hostile work environment" as a cause of discrimination). However, she included, *inter alia*, the following allegations:

(b) Miller's demeanor toward me changed for the negative in the weeks and months after I informed her that I was receiving fertility treatments.

* * *

(e) Although there was a long-standing agreement with Respondent's administration that staff could occasionally work from home, Miller made comments to me about how she believed my two-year-old child would interfere with my work if I worked from home.

(f) Miller made comments about how I could not be an effective employee or could not work effectively from home as a mother of a small child.

(g) In May 2016, without notice or warning, Miller placed me on a Performance Improvement Plan (PIP). This PIP was not warranted by my performance.

(h) I had never before been placed on a PIP, and had not received any feedback that indicated that [Defendant] was displeased with my performance.

(i) When Miller placed me on the PIP, she provided no examples of how my work performance was allegedly deficient, and provided no ideas on how to fix my allegedly deficient performance.

(*Id.*) Based on the totality of Plaintiff's administrative submission, we conclude that her hostile work environment claim is within the scope of the investigation that reasonably could have been expected to arise from her charges of sex and pregnancy discrimination. *See, e.g.*, *Mitchell v. Cmty. Educ. Ctrs., Inc.*, No. 14-5026, 2015 WL 4770652, at *9 (E.D. Pa. Aug. 11, 2015) (finding hostile work environment claim to be fairly within the scope of plaintiff's EEOC complaint); *Weems v. Kehe Food Distrib., Inc.*, 804 F. Supp. 2d 339, 341-42 (E.D. Pa. 2011) (same).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Clarify and Confirm Claims Alleged in Complaint will be denied.

An appropriate order will follow.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**